## BROCK *vs.* STURDIVANT.

By contract *in writing*, A. agreed to deliver to B. from *one to three hundred* perch of stone, at one dollar the perch. In an action by A., brought to recover the price of a quantity of stone delivered, he proved, *by parol*, an agreement made subsequently to the written one, (which written contract was introduced by the defendant,) to deliver from *two to six hundred* perch, at the same price. *Held*, that the evidence was admissible, inasmuch as it did not contradict, vary or explain the written contract, and applied merely to that portion of the stone not covered by the written contract.

THIS was an action of *assumpsit*, in which the plaintiff declared in a count of general *indebitatus assumpsit* upon account annexed, and on a special contract set forth in his declaration. The general issue was pleaded and joined, and a brief statement was also filed by the defendant.

The plaintiff offered witnesses to prove a *parol* contract, for

the delivery of a large quantity of island rocks, for the purpose of laying into wall, at a place called *Robinson's wharf;* and *Isaac Washburn* and *Benjamin Brock*, being called by him, testified to such a contract, as having been made in their presence, on , the 2*d* of *April,* 1833 ; — that the agreement was for the delivery of from *two to six hundred* perch. *Brock* was to have one dollar per perch for the stone, delivered on the wharf, or one dollar and twenty-five cents if he laid them into wall ; and it was to be optional with him whether to lay them or not. One of the witnesses testified that he understood, by the agreement, that the rocks were to be measured, and both testified that it was stated that the agreement which they witnessed, was to be put in writing.

The defendant's counsel objected to the introduction of such proof, on the ground that there was a special contract in regard to the subject matter as set forth in the declaration ; but as no such written contract was shewn, *Parris J.*, who tried the cause, overruled the objection and permitted the witnesses to testify, reserving to the defendant's counsel, at his request, the benefit of the objection, if he should be entitled to it. The witnesses testified to the delivery of a large quantity of rocks, according to the agreement, and that *Sturdivant* was frequently present when boat loads were delivered, directed where they should be deposited, and expressed his satisfaction with the quality. The rocks were not laid into wall by *Brock*, but *Sturdivant* employed other persons to do it.

The defendant's counsel, at the commencement of his defence, introduced the following written contract : — " *March* 23, 1833. " Then agreed with *Daniel Brock*, to furnish and deliver at *Rob*- " *inson's wharf*, from *one to three hundred* perch of stone, suita- " ble to lay into a wall to build up the old wharf, at \$1 per " perch if hove on the old wharf, or \$1,25 per perch if laid into " said wall in a workmanlike manner, one half to be paid as fast " as the stone are brought, the other half as soon as the stone " are laid and measured, which is to be done as soon as it can be " conveniently. — Witness our hands.

> *Daniel Brock.*
> *Isaac Sturdivant.*"

The defendant's counsel also suggested, that a counterpart of the agreement was in possession of the plaintiff, and contended that the parol evidence, in regard to such contracts, should be excluded and ought to be laid out of the case; and argued to the jury, that if such written contract had been originally shown or admitted, the parol evidence would have been ruled out. But, inasmuch as the contract, proved by parol, appeared to be subsequent to the written contract, and the quantity of rocks contracted to be delivered under the parol agreement, was much larger than the quantity mentioned in the written contract, the presiding Judge did not exclude the parol evidence.

In the course of his closing argument, the plaintiff's counsel stated that he had a counterpart of the agreement of *March* 23*d*, 1833, and stated, as a reason why it had not been produced before, that it had been mislaid in the Clerk's office, and offered now to produce it to the jury, but the defendant's counsel objected thereto.

The parol testimony, being submitted to the jury, the defendant's counsel commented thereon as a part of the plaintiff's evidence, and it was insisted on by the plaintiff's counsel, in support of the action. The defendant's counsel argued, that the parol testimony, if proper for the consideration of the jury, was to be considered in connection with the written contract, and that its import, if it comprehended the whole or extended to the further quantity of rocks to be delivered than that expressed in the written contract, should be regulated and determined by the terms of that contract, both as to the manner of ascertaining the quantity and time of making payment.

The plaintiff's counsel contended, that the terms of the written contract were to be confined to the amount of three hundred perch therein expressed, and were not to be extended to the further quantity claimed to have been delivered, but that the extra quantity was the subject of a separate parol agreement, testified to by the witnesses, independent of the terms of the written contract.

The Court instructed the jury, that the written contract exhibited, was to be the rule for the quantity therein expressed, and that although parol evidence is not admissible to explain or modify a written contract, yet the terms of a written contract may be

subsequently extended by parol, or a new parol agreement may be made, touching the matter of a written agreement; that, as the terms of the parol contract, in this case, were similar to those of the written contract, it was not material whether the parol contract was considered as an extension of the written contract, or as independent of it; that, the rights of the plaintiff, or the liabilities of the defendant, were no greater under the parol contract, than under the written; except that a greater quantity of rocks appeared to have been delivered, than was provided for by the written contract.

The defendant had paid on account of the contract, at different times, to the amount of $269; — an order was also drawn on the defendant, by the plaintiff, *Oct.* 29, 1833, for $100, in favor of *Smith & Brown,* or order, and specially accepted by the defendant, *Nov.* 19, 1833, in the following terms : " Accept- " ed to pay what may be due after deducting former liabilities." The order was not subsequently presented to the defendant for payment, but was taken up by the plaintiff.

There having been no admeasurement of the rocks, the plaintiff introduced evidence, tending to show that a part of the rocks were so laid in the wall, by the defendant, as to render an admeasurement of them impracticable — and that with regard to another part, there was an unreasonable delay by the defendant, in laying them in the wall.

It was contended, by the defendant's counsel, that the circumstance of the order being drawn and accepted, as before stated, might be considered as evidence of waiver, by the plaintiff, of any delay by the defendant, in laying the remainder of the rocks, or of consent that the subject should be suffered to remain in the state it then was, at the time of drawing and accepting the order, for a reasonable and convenient time and season for finishing the laying, or ascertaining and adjusting the amount or balance due, according to the agreement. But the presiding Judge stated, that the order might, perhaps, be considered as evidence of the amount supposed to be due by the plaintiff, but that he did not regard it as evidence of a waiver, as contended for by the defendant's counsel.

It was contended further, that no action would lie on the agreement, until after payment had been requested, of which there was no evidence; but the Judge ruled, that if *Sturdivant* had neglected to do what was incumbent on him to do, that is, seasonably to lay the rocks into such a wall as could be measured with reasonable accuracy, the plaintiff might maintain this action without shewing a previous demand.

The jury returned a verdict for the plaintiff, for $243,96, which was to be subject to the opinion of the whole Court, upon the facts as reported.

*Fessenden* and *Daveis*, for the defendant, to the point relating to the inadmissibility of parol evidence, cited the following authorities, viz.: 2 *Stark. Ev.* 81 ; 2 *Barn. & Cres.* 634 ; *Brewer* v. *Palmer*, 3 *Esp. Rep.* 203 ; *Jeffrey* v. *Walton*, 1 *Stark. Cas.* 239 ; 3 *Stark. Ev.* 1515; *Hodges* v. *Drakeford*, 1 *N. H. Rep.* 270 ; *Rex* v. *St. Paul*, 6 *Term Rep.* 454 ; *Fielder* v. *Ray*, 6 *Bing.* 332 ; *Fenn* v. *Griffith*, 6 *Bing.* 530.

They also insisted that there had been a waiver by the plaintiff, of any claim arising out of the alleged neglect of the defendant, as to the laying of the rocks.

*Longfellow*, for the plaintiff.

WESTON C. J. — The rule of law, that where parties have entered into a written contract, parol testimony of what has been agreed is inadmissible, is well established. It is a rule, not controverted in this case, and is uniformly enforced and practised upon in our courts.

The plaintiff attempted to prove his case by parol testimony ; and he thus proved a contract for the delivery of from two to six hundred perch of stones. This was objected to by the counsel for the defendant, upon the ground that there was written evidence of what the parties had agreed. This was affirmed at the time of the objection, but proof that any written evidence existed, did not appear, until a subsequent stage of the trial. But it was all at length received, and we are now able to determine, from a view of the whole testimony, whether that which was objected to, was admissible at the time. The parties made a contract in writing, in *March*, 1833, wherein the plaintiff agreed to deliver

for the use of the defendant, from one to three hundred perch of stones, upon certain stipulated terms. It was at the option of the plaintiff to deliver, under this contract, the less or the greater number of perch stated, or any intermediate quantity. That contract remained as evidence of what the parties had then agreed, nor was it attempted at the trial to vary, impair or explain it, by any parol testimony. But in the *April,* following the first agreement, the parties made a new contract by parol. It does not appear that they had it in contemplation to rescind the first ; nor was there any reference thereto in the parol contract. They do not at all conflict with each other. They may both be enforced, without any violation of the principles of law. The defendant wanted more stones, than he had a right to demand under the first contract, and he made a second parol agreement with the plaintiff, to furnish the additional quantity.

The second was a new and independent contract, of which, and of its fulfilment on his part, it was competent for the plaintiff to offer parol testimony. As to that contract, he could offer no other. His declaration covered both contracts ; but it was no prejudice to the defendant, if he proved but one of them. Our attention is called only to the competency of the testimony, and not to the regularity of the course, pursued by the plaintiff in other respects. There would have been a propriety in his proving his whole case in his opening ; but the reason assigned for his failing to do so is satisfactory, that his written evidence could not at that time be found. The defendant introduced the counterpart of the first agreement, the effect of which was to show, that all the stones were not delivered under the second contract. And then the plaintiff, having found the original, introduced that, also, by which the first contract was proved, of which the plaintiff had offered no evidence whatever in his opening. The whole case, with all the testimony which could bear upon it, was at length fairly before the jury, and they have passed upon its merits. We are satisfied that the testimony objected to was admissible as evidence of the second contract ; and it does not appear to have been offered for any other purpose.

No other objection is taken to the ruling and instructions of the presiding Judge, at the trial, except as to the effect of the

Brock *v.* Sturdivant.

order drawn by the plaintiff, in *October*, 1833, in favor of *Smith & Brown*, and of the special acceptance of the defendant thereon. It is insisted, that this was evidence of a waiver, by the plaintiff, of any right to charge the defendant upon the ground of neglect and failure on his part, and of consent by the plaintiff that the business might be further delayed; and that the jury should have been so instructed. But we are of opinion, that no such evidence is fairly deducible from the order, or its acceptance. If the order itself proves any thing, it is, that the plaintiff claimed to have funds then due, in the defendant's hands. By the acceptance, the defendant undertook to pay " what may be due, after deducting former liabilities." This implies, not that the plaintiff had then no existing demand, under the contract in controversy, but that the defendant had opposing claims, by way of offset. If any such existed, upon being filed, the defendant could have had the benefit of them, upon competent proof at the trial, but nothing of this sort was attempted. And whatever was to have been implied from the acceptance, it does not appear to have been satisfactory, either to the holder or to the plaintiff; as the order was given up by the one, and received back by the other.

*Judgment on the verdict.*